DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court and the following disposition is made:
 {¶ 1} Defendant-Appellant Evan T. Miller ("Husband") appeals from the judgment of the Medina County Court of Common Pleas, Domestic Relations Division. The appeal is dismissed.
 I {¶ 2} Husband and Janice M. Miller ("Wife") were married on October 25, 1969. Husband worked both before and during the parties' marriage and participated in each of the following retirement accounts: a United Airlines defined-benefit account, a Frank Russell Corporation "A fund" account ("the Frank Russell account"), and a Retirement Advisors of America "B fund" account *Page 2 
("the RAA account"). After Wife filed for divorce on August 10, 2000, the parties engaged in lengthy litigation, culminating in this appeal. The sole issue on appeal is whether the trial court properly divided Husband's two defined-contribution accounts, the Frank Russell and the RAA account ("the Accounts").
 {¶ 3} The parties' divorce hearing took place on July 25, 2001. At the hearing, the parties read an agreement into the record, part of which defined how they would distribute the Accounts. The record provides as follows:
 "There are some retirement pension accounts that are set forth on Attachment B[.] * * * [The Accounts] * * * are the United Airlines related accounts typically called the "A" and "B" funds. Those also will be divided taking into consideration the premarital component credit to [Husband] before the equal division. * * * The pension distribution — the "A" and "B" funds — will be handled through a qualified domestic relations' order."
 {¶ 4} On October 26, 2001, the trial court journalized the parties' divorce decree, using a proposed journal entry submitted by Husband. The relevant portion of the journal entry provides as follows:
 "The parties have agreed and the Court hereby orders that with respect to [Husband's] three (3) retirement plans through United Airlines, consisting of his monthly pension, the Frank Russell [account] account and the [RAA account], referred to respectively as the A and B Plans that those should be divided by Qualified Domestic Relations Orders ["QDROs"]. Said order shall be prepared by QDRO Consultants, and the parties agree that each shall be responsible for one-half of the expense of preparing such Qualified Orders. The date of the [QDROs] shall be a division on date of final hearing, which is as of July 25, 2001. The parties agree and the Court orders that the distribution by and between [Wife] shall be 50 percent of the marital covertures value therein. It is the express understanding and agreement of the parties and the order of the Court, that [Husband] was employed for some period of time *Page 3 prior to the date of marriage, and it is the agreement of the parties and the order of the Court, that defendant shall be entitled to his premarital share free and clear of the claims of [Wife], and that the remainder, attributable to the period of the marriage, shall be divided equally by [QDROs][.]" (Emphasis added.)
Despite the court's order, the parties were unable to agree on specific QDROs. Over the next five years, Husband and Wife prepared and submitted various competing QDROs.
 {¶ 5} In a May 2, 2006 journal entry ("the 2006 Order"), the trial court tried to bring an end to the disputes. It acknowledged that it was without jurisdiction to modify the divorce decree, but found that it had authority to interpret ambiguous language contained therein. Finding an ambiguity in the language of distribution italicized above, the court set out a specific formula for the division of the Accounts ("the 2006 Formula") and rejected all previously submitted QDROs.
 {¶ 6} Neither party appealed from the 2006 Order. Rather, they filed numerous additional motions[1] and submitted additional QDROs. On June 29, 2007, the trial court denied all of the parties' outstanding motions and adopted Wife's QDROs. After various unsuccessful motions to stay the implementation of *Page 5 
Wife's QDROs, Husband's appeal is now before this Court, raising one assignment of error.
 II Assignment of Error "THE TRIAL COURT ERRED IN ORDERING A DIVISION OF PROPERTY CONTRARY TO THAT CONTAINED IN ITS DECREE OF DIVORCE."
 {¶ 7} Husband argues that the trial court erred when it adopted the 2006 Formula. He contends that the 2006 Formula does not accurately implement the 2001 agreed division of the Accounts. However, we do not reach the merits of Husband's argument because we find that that Husband did not timely appeal the 2006 Order.
 {¶ 8} Prior to the Ohio Supreme Court's decision in Wilson v.Wilson, 116 Ohio St.3d 268, 2007-Ohio-6056, it was this Court's position that a divorce decree was not a final, appealable order until the trial court also adopted the parties' QDRO(s). See Wilson v. Wilson, 9th Dist. No. 05CA0078, 2006-Ohio-4151 (rejecting a challenge to a decree for lack of a final appealable order). However, the Wilson Court rejected this Court's position and held that, "[a] divorce decree that provides for the issuance of a [QDRO] is a final, appealable order, even before the QDRO is issued." Wilson, at syllabus. The Court clarified that a QDRO "merely implements the divorce decree[,]" it "does not in any way constitute a further adjudication on the merits[.]" Id. at ¶ 15-16. TheWilson *Page 5 
decision was issued on November 20, 2007, three months after Husband filed his notice of appeal. Consequently, the first issue before this Court is whether the Wilson decision, issued during the pendency of Husband's appeal, applies to this case. We conclude that it does.
 {¶ 9} "In the absence of a specific provision in a decision declaring its application to be prospective only, the decision shall be applied retrospectively as well[.]" (Internal citations omitted.) State ex rel.Bosch v. Industrial Com `n of Ohio (1984), 1 Ohio St.3d 94, 98. "The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." Peerless Electric Co. v. Bowers (1955), 164 Ohio St. 209,210; see, also, Wears v. Motorists Mut. Ins., Co., 9th Dist. No. 22027,2005-Ohio-341, at ¶ 9; Williams v. Jones, 4th Dist. No. 04CA06,2004-Ohio-5512, at ¶ 9. Unless an exception applies, "when case law controlling disposition of a pending appeal changes during the pend[e]ncy of the appeal, the reviewing court should apply the new law to the pending appeal." Vujovic v. Vujovic, 9th Dist. No. 04CA0083-M, at ¶ 14, citing Wears at ¶ 22.
 {¶ 10} The Wilson Court did not include a specific provision indicating that the application of its decision should be prospective only. Rather, it based its decision on the longstanding Civ.R. 75(F). Wilson
at ¶ 8-16 (noting that Civ.R. 75 *Page 6 
provides for the finality of judgment in divorce cases and does not base its finality determination upon the issuance of a QDRO). Civ.R. 75 governs divorce, annulment, and legal separation actions.Wilson simply interpreted Civ.R. 75(F) and clarified that a party may appeal from a final order in a divorce case even before the QDRO issues. See id. at ¶ 15-16 (specifying that the decree itself divides the parties' property, not the QDRO, which merely implements the decree's terms). The Court did not limit its holding to future cases or indicate that that retroactive application would be inappropriate. Consequently, we find that the Supreme Court did not intend for Wilson to be applied only prospectively.
 {¶ 11} Next, we must consider whether Wilson's application would interfere with any contractual or vested rights that Husband might have acquired under the pre-Wilson law. See Peerless,164 Ohio St. at 210. A vested right is one that "so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." Harden v. Ohio Atty. Gen., 101 Ohio St.3d 137, 2004-Ohio-382, at ¶ 9, quoting Black's Law Dictionary (7th Ed. 1999) 1234. "A right, not absolute but dependent for its existence upon the action or inaction of another, is not basic or vested[.]" Hatch v. Tipton (1936),131 Ohio St. 364, paragraph two of the syllabus. Our review of the record discloses only one arguable right that Husband might have accrued under the pre-Wilson law; that is, his right to an appellate review. *Page 7 
 {¶ 12} The Ohio Constitution provides, in relevant part, that "[c]ourts of appeals shall have such appellate jurisdiction as may be provided bylaw to review and affirm, modify, or reverse final orders[.]" (Emphasis added.) Art. IV, Sec. 3(B)(2). The Ohio Supreme Court has held that "[n]o one has a vested right to a particular remedy." Vogel v.Wells (1991), 57 Ohio St.3d 91, 100, citing State v. Barlow (1904),70 Ohio St. 363, 374. In State ex rel. Michaels v. Morse, the Court elaborated on that proposition as follows:
 "The Legislature has complete control over the remedies afforded to parties in the courts of Ohio, and it is a fundamental principle of law that an individual may not acquire a vested right in a remedy or any part of it, that is, there is no right in a particular remedy. 10 Ohio Jurisprudence (2d), 616, Section 564. A party has no vested right in the forms of administering justice that precludes the Legislature from altering or modifying them and better adapting them to effect their end and objects. [Id., citing] Hays v. Armstrong (1835), 7 Ohio 247, 248; Trustees of Greene Tp. v. Campbell (1864), 16 Ohio St. 11; Templeton v. Kraner (1874), 24 Ohio St. 554; and Gager v. Prout (1891), 48 Ohio St. 89." State ex rel. Michaels v. Morse (1956), 165 Ohio St. 599, 605-06.
Thus, the law may limit an appellate court's ability to consider an appeal without regard to any claimed remedy that a litigant might espouse.
 {¶ 13} The Ohio Supreme Court also has noted that "[t]he right to file an appeal, as it is defined in the Appellate Rules, is a property interest and a litigant may not be deprived of that interest without due process of law." Atkinson v. Grumman Ohio Corp. (1988),37 Ohio St.3d 80, paragraph one of the syllabus. Recently, the Ohio Supreme Court reiterated that: *Page 8 
 "[F]ailure to give reasonable notice of final appealable orders is a denial of the right to legal redress of injuries created by Section 16, Article I of the Ohio Constitution. The opportunity to file a timely appeal * * * is rendered meaningless when reasonable notice of an appealable order is not given. [F]or due process purposes litigants are entitled to reasonable notice of the trial court's appealable orders. * * * [I]f a right of appeal from a trial court's judgment is to have meaning, the parties to the judgment or their attorneys of record must be given notice of the judgment before the time for appeal begins to run." (Internal quotations and citations omitted.) State ex rel. Sautter v. Grey, Slip Opinion No. 2008-Ohio-1444, at ¶ 9-10.
However, Sautter and Atkinson do not stand for the proposition that a litigant has a vested right to an appeal. Rather, they stand for the proposition that a litigant has a right to receive notice that the time for an appeal is ripe. That is, a litigant has a due process right to receive adequate service of process. See Sautter at ¶ 9-10; ¶ 17-18 (discussing litigant's right to notice where clerk of courts failed to timely serve notice of original judgment on the parties); see, also,Atkinson, 37 Ohio St.3d at 81 (involving litigant's right to notice where the parties did not receive any notice of the filing of judgment). Accordingly, Sautter and its predecessors are not an impediment to the retroactive application of Wilson in this case because they do not resolve the issue of whether Husband has a vested right in this appeal pursuant to Peerless. To determine whether Husband has a vested right to appellate review, we must apply the law of Harden and Hatch. SeeHarden, supra (noting that vested rights are those that cannot be impaired or taken away without a person's consent); Hatch, supra (noting that vested rights are those that do not depend upon the action or inaction of another). *Page 9 
 {¶ 14} Despite the apparent harshness of this result, we find that the right to an appeal is not a vested one. The Ohio Constitution clearly indicates that the law provides the basis for appellate jurisdiction. See Art. IV, Sec. 3(B)(2). App.R. 4 provides that "[a] party shall file the notice of appeal * * * within thirty days of the later of entry of the judgment or order appealed[.]" "Where a notice of appeal is not filed within the time prescribed by law, the reviewing court is without jurisdiction to consider the issues that should have been raised in the appeal." (Emphasis added.) State ex rel. Pendell v. Adams Cty. Bd. ofElections (1988), 40 Ohio St.3d 58, 60. Therefore, the availability of an appeal depends upon a litigant's procedural conformance. Specifically, it depends upon him filing his notice of appeal within the thirty day timeframe provided by law. Since the Appellate Rules limit a litigant's ability to obtain an appeal, the right to appellate review is not absolute and, therefore, cannot be a vested right. SeeHarden at ¶ 9 (holding that vested rights are those rights that cannot be impaired or taken away without a person's consent). As such, Husband does not have a vested right to an appeal. Nor does he have any other contractual or vested right that would prevent Wilson's retroactive application. See Peerless, supra.
 {¶ 15} The final step in our analysis is to apply Wilson to Husband's appeal. Husband purports to appeal from the trial court's June 29, 2007 order, which formally adopted Wife's QDROs. However, the actual basis for Husband's challenge is the 2006 Order interpreting the parties' divorce decree and adopting *Page 10 
the 2006 Formula. Husband conceded at oral argument that Wife's QDROs properly apply the 2006 Formula, but contends that the 2006 Formula is wrong. However, Husband failed to appeal from the 2006 Order, presumably because he relied on this Court's pre-Wilson case law and assumed that it was not a final, appealable order. We now know that the 2006 Order was final and appealable even before the later adoption of the Wife's QDROs because the trial court had already issued judgment as to the parties' divorce, property division, and spousal support. SeeWilson, supra; Civ.R. 75(F)(1). Accordingly, Husband should have timely appealed from the 2006 Order.[2] Because Husband did not file his notice of appeal in a timely manner, we have no jurisdiction to consider the merits of his appeal. See Pendell, 40 Ohio St.3d at 60. We would, however, have jurisdiction to review the content of Wife's QDROs had husband made the claim on appeal that her QDROs did not accurately implement the 2006 Formula. However, Husband made no such claim on appeal. Indeed, as noted above, he conceded that Wife's QDROs are consistent with the 2006 Formula.
 {¶ 16} In finding that we do not have jurisdiction to hear Husband's appeal, we do not hold that a party can never appeal from the filing of a QDRO if the *Page 11 
party believes that the QDRO does not properly effectuate the finalized divorce decree. We only hold that a party must file a timely notice of appeal from the order that he or she is actually contesting. Because we lack jurisdiction, we cannot review Husband's sole assignment of error.
 III {¶ 17} Because this Court lacks jurisdiction, Husband's appeal is dismissed. All other outstanding motions are denied.
Appeal dismissed.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
MOORE, P. J. CONCURS
[1] None of the motions are relevant to or dispositive of this appeal.
[2] Unlike the Appellant in Wilson, Husband did not test the precedent in the Ninth District on this issue. Husband always had the option of filing a timely appeal in this Court and then seeking further review in the Ohio Supreme Court. See Wilson, supra (reversing this Court's determination that a divorce decree was not a final, appealable order). He chose not to exercise this option. *Page 12