[Cite as *Powless v. Powless*, 2025-Ohio-5795.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JULIE L. POWLESS<br>  [now known as JULIE L. STRONG],<br><br>    Plaintiff - Appellee<br><br>-vs-<br><br>MARK W. POWLESS,<br><br>    Defendant - Appellant | Case No. 25 CA 00027<br><br><u>Opinion & Judgment Entry</u><br><br>Appeal from the Court of Common Pleas<br>of Licking County,<br>Domestic Relations Division,<br>Case No. 2003 DR 00619<br><br>Judgment:   Affirmed<br><br>Date of Judgment:  December 29, 2025 |

BEFORE: William B. Hoffman; Kevin W. Popham; David M. Gormley, Judges

APPEARANCES: Jessica N. Rowland and Joseph A. Nigh, Columbus, Ohio, for Plaintiff-Appellee; Craig M. Stewart, Columbus, Ohio, for Defendant-Appellant.


*Gormley, J.*

**{¶1}**   Defendant Mark Powless argues in this domestic-relations appeal that the trial court erred by approving Plaintiff Julie Strong's proposed division-of-property order that awarded her — in accordance with the parties' 2003 divorce decree under which Strong was entitled to one-half of Powless's "retirement benefits" — one-half of Powless's disability benefits that the trial court found he was receiving in lieu of retirement benefits. Strong in turn argues that we should dismiss this appeal because the April 3, 2025 judgment entry that Powless challenges was not, in her view, a final and appealable order. For the reasons explained below, we deny Strong's motion to dismiss and affirm the trial court's judgment.

**The Key Facts and Procedural History**

{¶2} Strong and Powless were married for over 20 years before their marriage was terminated by a 2003 divorce decree, which provided that Strong was "awarded one-half of the state pension and/or retirement benefits" that Powless had earned during their marriage.

{¶3} Strong alleges that several years after the 2003 divorce in this case, she learned that Powless was receiving disability benefits instead of retirement benefits. (Strong was not then receiving either type of benefit under the divorce decree.) Strong in February 2024 filed a motion for relief from judgment under Civ.R. 60(B). In its decision denying that motion in July 2024, the trial court found that Strong had not presented sufficient evidence that Powless was receiving disability payments in lieu of any retirement benefits.

{¶4} In that same ruling, though, the trial court found that the term "retirement benefits" in the 2003 divorce decree was ambiguous, and the court noted that "disability benefits received in lieu of retirement pay constitute retirement benefits." This meant, in the trial court's view, that Strong was entitled to receive one-half of any disability payments that Powless was receiving in lieu of any retirement pay to which he was entitled for his employment during the parties' marriage.

{¶5} The trial court also opined in its July 2024 ruling that a better vehicle for resolving the concern raised by Strong would be a motion from her seeking clarification of the divorce decree's ambiguous language rather than the Civ.R. 60(B) motion that she had filed. The court also outlined the proper steps that the parties could take to submit a proposed order to divide any disability compensation that Powless was receiving in lieu of retirement benefits.

**{¶6}** In February 2025, the trial court, seemingly frustrated by the parties' inability to resolve the issue, ordered the parties to submit evidence indicating whether Powless was in fact receiving disability benefits in lieu of retirement benefits and, if so, the amount of those benefits. The court also ordered Powless to sign a release of information to allow the State Teachers Retirement System (STRS) to disclose information about any disability or retirement payments that he was receiving.

**{¶7}** After Strong received information from STRS about payments being made to Powless, her counsel enlisted the assistance of a legal and actuarial consulting firm known as the QDRO Group. QDRO Group determined — after looking at Powless's information from STRS — that Powless was indeed receiving disability benefits in lieu of standard monthly retirement benefits and would continue to receive those benefits assuming that his condition remained unchanged and he did not return to work for STRS. Based on that information, combined with Powless's failure to submit any evidence to the contrary, the court adopted Strong's proposed order that called for her to begin receiving one-half of Powless's disability benefits. Powless now appeals the trial court's decision.

## This Court Has Jurisdiction to Hear Powless's Appeal

**{¶8}** We first address Strong's argument that we should dismiss this appeal for lack of jurisdiction. According to her, the trial court's April 3, 2025 judgment entry approving her request to receive half of the disability benefits now being paid to Powless was not a final and appealable order because the court's order merely enforces the terms of the 2003 divorce decree, which she argues was the one final and appealable order in this case.

**{¶9}** A trial court's decision regarding the division of retirement benefits in a divorce action may be implemented through the issuance of a qualified domestic-relations order (QDRO), which "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits" payable under a retirement plan. *Wilson v. Wilson*, 2007-Ohio-6056, ¶ 6–7. Such orders dividing retirement benefits payable by one of Ohio's public retirement systems are referred to as division-of-property orders (DOPO) because they must comply with certain statutory requirements under Ohio law, but appellate courts generally treat QDROs and DOPOs no differently. *See Reeves v. Reeves*, 2016-Ohio-4590, ¶ 9 (12th Dist.) ("While the issue in the case at bar is the future execution of a DOPO, rather than a QDRO, the reasoning remains the same and is not changed merely because the DOPO is specific to a state pension where the QDRO divides private pensions"); *Rice v. Rice*, 2011-Ohio-1366, ¶ 7 (8th Dist.) ("The terms DOPO and QDRO are used interchangeably for the purposes of this appeal").

**{¶10}** The Supreme Court of Ohio has explained that because it is the decree of divorce that constitutes the final determination of the court when a domestic-relations case is resolved on the merits, the divorce decree itself is the final and appealable order, even if the decree calls for the future preparation of a QDRO. *Wilson v. Wilson*, 2007-Ohio-6056, ¶ 15–16. Based on that logic, a QDRO that adheres to the terms of an earlier-issued divorce decree is not an independent final order that may be challenged in an appeal. *Dutton v. Dutton*, 2025-Ohio-1980, ¶ 22 (10th Dist.); *Lamb v. Lamb*, 1998 Ohio App. LEXIS 6007, *5 (3d Dist. Dec. 4, 1998) ("the QDRO in this case does not affect a substantial right of the parties in that it merely mimics the order of the original divorce

decree"). Once a trial court has made its equitable division of marital property in a divorce decree, that court no longer has jurisdiction to modify the decision. *Butcher v. Butcher*, 2011-Ohio-2550, ¶ 8 (8th Dist.), citing R.C. 3105.171(I).

**{¶11}** A trial court does, however, retain broad jurisdiction "to clarify and construe its original property division so as to effectuate the judgment." *Oberst v. Oberst*, 2010-Ohio-452, ¶ 22 (5th Dist.). If a trial court finds that an ambiguity exists in a divorce decree, that court has both a duty and the power to clarify and interpret it. *Id.* at ¶ 23.

**{¶12}** And a trial court's decision interpreting for the first time the meaning of ambiguous language in an earlier divorce decree is a final and appealable order that an appellate court has jurisdiction to review. *Miller v. Miller*, 2008-Ohio-2106, ¶ 15 (9th Dist.) ("the actual basis for Husband's challenge is the 2006 Order interpreting the parties' divorce decree and adopting the 2006 Formula. . . . We now know that the 2006 Order was final and appealable"); *Haddox v. Haddox*, 2022-Ohio-3500, ¶ 47–48 (6th Dist.) ("All that remained to determine was the methodology of th[e] offset, which the trial court found to be 'unclear' from the original decree. . . . Since the trial court first determined the methodology for the offset in its October 18, 2018 decision, that decision was final and appealable").

**{¶13}** We find that the trial court's April 3, 2025 order resolving an alleged ambiguity in the divorce decree and approving Strong's proposed DOPO is a final and appealable order. Under the 2003 divorce decree, Strong is entitled to "one-half of the state pension and/or retirement benefits" earned by Powless during the marriage. The term "retirement benefits" is ambiguous, according to the trial court, and that court has

now clarified what that term means.  That decision by the trial court is, in our view, a final and appealable order, and Powless's appeal is therefore properly before us now.

**The Trial Court Did Not Err by Approving Strong's Proposed DOPO**

{¶14}  Powless argues in his sole assignment of error that the trial court erred in approving Strong's proposed DOPO that calls for his ex-wife to receive one-half of the monthly disability payment being paid to him by STRS.   In support of his argument, Powless argues that the trial court, in its July 2024 entry denying Strong's Civ.R. 60(B) motion for relief from the divorce-decree judgment, found that Strong had failed to present sufficient evidence that he was receiving disability compensation in lieu of retirement benefits.   That finding by the trial court, Powless argues, precluded Strong from presenting any further evidence to the court regarding the issue of Powless's disability benefits.

*The Doctrine of Claim Preclusion Did Not Bar the Trial Court From Considering Additional Evidence Concerning the Proper Interpretation of the 2003 Divorce Decree*

{¶15}  Under the doctrine of claim preclusion, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."  *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995).

{¶16}  We are unpersuaded by Powless's argument that claim preclusion barred the trial court from considering whatever evidence might be needed by that court to give proper effect to the 2003 divorce decree.  Trial courts in domestic-relations cases have long been permitted to hold post-decree hearings and to consider at those hearings any extrinsic evidence that helps to clarify ambiguities in divorce decrees.  *See Slife v. Slife*,

1987 Ohio App. LEXIS 10334, * 40 (10th Dist. Dec. 31, 1987) ("the trial court, in the midst of continuing dispute between the parties, merely clarified its original judgment but did not disturb a final judgment which was conclusive of the rights of the parties"); *Dorsky v. Dorsky*, 1981 Ohio App. LEXIS 14072, *15 (8th Dist. Dec. 10, 1981) (finding that, although a divorce decree is a final judgment as to all issues adjudicated in the divorce action, that does not mean that "a divorce decree may not be interpreted or clarified," and "parol evidence may be used to interpret an ambiguous divorce decree").  In other words, the trial court's finding that Strong presented insufficient evidence to be relieved from the 2003 divorce decree did not preclude the trial court from later considering evidence necessary to enforce the terms of that final judgment.

{¶17}  In the April 2025 judgment entry in which the trial court approved Strong's DOPO, that court pointed out that it viewed the issue raised by Strong in her 60(B) motion not as one seeking relief from judgment, but instead as a request to clarify and interpret language already contained in the 2003 divorce decree.  We therefore find that claim preclusion did not prevent the court from seeking additional evidence to interpret the meaning of the language in the 2003 divorce decree.

*The Trial Court Had the Authority to Clarify and Enforce the Terms of the 2003 Divorce Decree*

{¶18}  Powless argues that the trial court improperly ordered the division of an asset that was not marital property.  We disagree.

{¶19}  We review with fresh eyes a trial court's finding that language is ambiguous.  *Oberst*, 2010-Ohio-452, at ¶ 24 (5th Dist.).  If an appellate court agrees that language is ambiguous, the trial court's clarification is reviewed for an abuse of discretion.  *Stevens v. Stevens*, 2018-Ohio-2662, ¶ 31 (2d Dist.).

**{¶20}** As explained above, a trial court retains broad jurisdiction to "clarify and construe its original property division so as to effectuate the judgment." *Oberst* at ¶ 22. "An ambiguity exists when a provision in an order or decree is reasonably susceptible to more than one meaning." *McKinney v. McKinney*, 142 Ohio App.3d 604, 609 (2d Dist. 2001). Where an ambiguity exists, the trial court has the duty to interpret and clarify the language by considering the intent of the parties and the fairness of the agreement. *Oberst* at ¶ 23.

**{¶21}** Our court has previously determined that disability benefits are not marital property unless those benefits are being received in lieu of retirement pay, "'in which case they are marital property to the extent that retirement pay value is included in the disability pension benefit.'" *Cockerham v. Cockerham*, 2017-Ohio-5563, ¶ 28 (5th Dist.), quoting *Bevan v. Bevan*, 2008-Ohio-724, ¶ 7 (9th Dist.).

**{¶22}** The 2003 divorce decree awarded to Strong "one half of the state pension and/or retirement benefits" of Powless. We agree with the trial court's finding that the meaning of "retirement benefits" is unclear in the 2003 divorce decree. That term was not defined anywhere in the decree, and as the trial court noted, that term does not have the same straightforward meaning as the term "pension." The trial court, therefore, had the authority to clarify the meaning of the term "retirement benefits" in the 2003 divorce decree, and that court permissibly directed the parties to submit evidence on the question.

**{¶23}** In applying our court's decision in *Cockerham*, the trial court determined that, under the terms of the 2003 divorce decree, Strong was entitled to one-half of Powless's disability benefits because they were being received by him in lieu of standard age-and-service retirement benefits. In reaching that conclusion, the trial court

considered evidence submitted by Strong, including a letter from STRS stating that Powless was in fact receiving a disability retirement benefit. Strong also submitted to the court information she obtained after working with QDRO Group, which found — after looking at documents provided by STRS — that Powless was receiving disability benefits in lieu of standard monthly age-and-service retirement benefits and would continue to do so for his lifetime unless his condition improved or he returned to work for STRS. Powless, in turn, provided no new evidence to the court.

{¶24} On this record, we see no abuse of discretion in the trial court's finding that the divorce decree's term "retirement benefits" includes the disability payments now being received by Powless. His assignment of error is overruled.

{¶25} For these reasons, Strong's motion to dismiss the appeal is denied, and the judgment of the trial court is affirmed. Costs are to be paid by Appellant Mark W. Powless.

By: Gormley, J.;

Hoffman, P.J. and

Popham, J. concur.