[Cite as *Mathews v. Mathews*, 2013-Ohio-2471.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK   COUNTY

KAREN E. MATHEWS                            :
                                            :       Appellate Case No. 2012-CA-79
    Plaintiff-Appellee/Cross-Appellant  :
                                            :       Trial Court Case No. 11-DR-124
v.                                          :
                                            :
DONALD R. MATHEWS                           :       (Civil Appeal from
                                            :        Common Pleas Court)
    Defendant-Appellant/Cross-Appellee  :
                                            :

. . . . . . . . . .

# O P I N I O N

Rendered on the 14th day of June, 2013.

. . . . . . . . . .

VALERIE JUERGENS WILT, Atty. Reg. #0040413, 333 North Limestone Street, Suite 104, Springfield, Ohio 45503
    Attorney for Plaintiff-Appellee

JOSEPH JUERGENS, Atty. Reg. #0024912, 1 South Limestone Street, Suite G, Springfield, Ohio 45502
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1}   Defendant-appellant Donald Mathews appeals from a judgment and decree of divorce.  He contends that the trial court erred by awarding Ms. Mathews a portion of his disability retirement benefits.  He further contends that the trial court erred in distributing the parties' assets.

{¶ 2} Plaintiff-appellee Karen Mathews cross-appeals, contending that the trial court erred by failing to order the parties to obtain a policy of life insurance on Mr. Mathews's life as a guarantee of continued retirement benefits to Ms. Mathews should Mr. Mathews predecease her.

{¶ 3} We conclude that the trial court properly divided the parties' assets, including Mr. Mathews's disability retirement benefits. We further conclude that the trial court did not err in denying the request for life insurance. Accordingly, the judgment of the trial court is Affirmed.

### I. The Trial Court Divides the Husband's Disability Pension Benefits

{¶ 4} The parties were married in 1979. Ms. Mathews filed this divorce action in February 2011. The trial was conducted in January, May, and July 2012.

{¶ 5} The trial court awarded Ms. Mathews an interest in Mr. Mathews's Police and Fire Pension Fund benefits, finding that although the benefits were awarded as disability retirement benefits, the benefits transmuted into retirement benefits in which Ms. Mathews was entitled to share. The trial court further divided the parties' marital assets and awarded Ms. Mathews a distributive award of monies to equalize the division. Finally, the trial court denied Ms. Mathews's request for an order requiring the parties to obtain life insurance in order to secure her portion of Mr. Mathews's disability retirement benefits.

{¶ 6} Mr. Mathews appeals; Ms. Mathews cross-appeals.

### II. The Trial Court Did Not Err in Awarding Ms. Mathews
### a Share of her Husband's Disability Pension Benefits

**{¶ 7}** Mr. Mathews's First and Second Assignments of Error state as follows:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THAT THE DISABILITY BENEFITS BEING RECEIVED BY THE DEFENDANT-APPELLANT TRANSMUTE OR CONVERT TO RETIREMENT BENEFITS WHEN HE ATTAINS RETIREMENT AGE.

THE DECISION OF THE TRIAL COURT THAT THE DISABILITY BENEFITS BEING RECEIVED BY THE DEFENDANT-APPELLANT TRANSMUTE OR CONVERT TO RETIREMENT BENEFITS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 8}** A trial court is accorded broad discretion in its division of marital property. *Bisker v. Bisker*, 69 Ohio St.3d 608, 609, 635 N.E.2d 308 (1994). The court's judgment will be disturbed only upon finding that it abused its discretion. The term "abuse of discretion" refers to judgments that are arbitrary, unreasonable, or unconscionable. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 9}** The manifest-weight-of-the-evidence standard of appellate review set forth in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), applies in civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17-23. Under *Thompkins*:

Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on

its *effect in inducing belief*." (Emphasis added.) Black's [Law Dictionary (6 Ed.1990)], *supra,* at 1594.

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs* [*v. Florida*], 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."). *State v. Thompkins* at 387.

{¶ 10} In contending that the trial court erred in awarding Ms. Mathews a portion of his disability bene Mr. Mathews argues that his disability benefits cannot be considered retirement benefits, because all of his bene considered as income replacement, which is not marital property. He further argues that the disability benefits not "in lieu of retirement benefits," and that this status will never change.

{¶ 11} In Ohio, "[t]he general rule is that pension or retirement benefits earned during the course of a marriage are marital assets and a factor to be considered * * * in the division of property." *Elsass v. Elsass*, 2d Dist. Greene Nos. 93-CA-0005, 93-CA-0016, 1993 WL 541610, *5 (Dec. 29, 1993). Disability pension benefits, on the other hand, are not considered to be marital property unless "they are accepted in lieu of retirement pay, [in which case] they are marital property to the extent that the retirement pay value is included in the disability pension benefit."

*Id.*, citing *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 178, 559 N.E.2d 1292 (1990). "On the date a spouse becomes eligible for retirement, the disability benefits being received, though not marital property per se, begin to represent retirement benefits to the extent that they equal the retirement benefits the spouse would receive but for his disability." *Young v. Young*, 2d Dist. Clark Nos. 08-CA-59, 08-CA-61, 2009-Ohio-3504, ¶ 31 (citation omitted.)

**{¶ 12}** The trial court made the following findings regarding Mr. Mathews's pension benefits:

Mr. Mathews began his employment as a Springfield firefighter on March 1, 1988, however, approximately 17 years later, he was injured, while on duty and on April 28, 2005, he ceased working and qualified for disability benefits through the Ohio Police and Fire Pension Fund. There are two types of disability benefits through the Ohio Police and Fire Pension Fund, the first of which is an "on duty" disability, the second being an "off duty" disability.

Mr. Mathews qualified for an "on duty" disability which means that he was entitled to approximately 60% of his highest average salary for a three year period of time and in consideration of his 17.21 years of service which he had at that time. The current monthly gross benefit which Mr. Mathews receives is $3,105.02, however, he also realizes a cost of living increase each year. In its <u>current</u> state, Mr. Mathews' disability benefits which he receives are "income replacement."

While Mr. Mathews is currently receiving his disability benefits, he is also accumulating service credits and, as such, on March 1, 2013, he will then have 25 years of accrued service and will be of requisite age to be entitled to retirement

disability benefits which are, at that time, in lieu of his service pension entitlements.

Dkt. 25, p. 11 (Emphasis sic.)

{¶ 13}   The evidence demonstrates that, for the purposes of his membership in the Ohio Police and Fire Pension Fund, Mr. Mathews began full-time employment as on March 1, 1988, and retired on a "disability retirement" pursuant to R.C. 742.38(D)(2) on April 28, 2005.   At that time, he had about 17½ years of service credit under the pension plan.   He was awarded a disability retirement benefit of 60% of his three highest years of earnings.   Mr. Mathews's benefits constitute a "retirement allowance" as defined by R.C. 742.01(I).

{¶ 14}   There is evidence in the record that by electing to receive disability retirement benefits, Mr. Mathews was required to forego applying for old-age retirement benefits.   The evidence further shows that his disability retirement will be a life-time benefit, unless he returns to work in the police or firefighter field or is determined by a physician to be able to return to work in those fields.   However, once a disability retirement recipient attains the age of 48, the pension board is not required to make a benefit recipient undergo yearly medical examinations to ensure that the disability continues.   *See* R.C. 742.4(C)(2)(a).   Finally, there is evidence in the record that as of March 1, 2013, Mr. Mathews reached retirement age under the pension plan.   Thus, his disability retirement benefits became the functional equivalent of retirement pension benefits on that date.

{¶ 15}   We conclude that the trial court's finding that Mr. Mathews's disability retirement benefits became retirement benefits on March 1, 2013, and that Ms. Mathews is entitled to share in those benefits, is neither an abuse of discretion, nor against the manifest weight of the evidence. This is not the rare case where a finder of fact lost its way, resulting in a manifest miscarriage of justice.   Accordingly, the First and Second Assignments of Error are overruled.

### III. The Trial Court Did Not Err in its Calculation of the Distributive Award Necessary to Achieve an Equitable Division of Property

{¶ 16}   Mr. Mathews's Third and Fourth Assignments of Error provide:

IT WAS AN ABUSE OF DISCRETION BY THE COURT IN FAILING TO CONSIDER THE VALUATION OF THE HOUSEHOLD FURNISHINGS AND APPLIANCES RECEIVED BY PLAINTIFF-APPELLEE, THE REAL ESTATE COMMISSION THAT PLAINTIFF-APPELLEE KEPT IN THE AMOUNT OF $8,750.00, AS WELL AS MARITAL INDEBTEDNESS THAT THE DEFENDANT-APPELLANT PAID OR WAS ORDERED TO PAY AS TO PROPERTY EQUALIZATION BETWEEN THE LITIGANTS.

IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE FOR THE COURT'S FAILURE TO CONSIDER THE VALUATION OF THE HOUSEHOLD FURNISHINGS AND APPLIANCES RECEIVED BY PLAINTIFF-APPELLEE, THE REAL ESTATE COMMISSION THAT PLAINTIFF-APPELLEE KEPT IN THE AMOUNT OF $8,750.00, AS WELL AS MARITAL INDEBTEDNESS THAT THE DEFENDANT-APPELLANT PAID OR WAS ORDERED TO PAY AS TO PROPERTY EQUALIZATION BETWEEN THE LITIGANTS.

{¶ 17} Mr. Mathews contends that the trial court erred with regard to the order requiring him to pay $29,000 as a distributive share to Ms. Mathews in order to equalize the property distribution between the parties.  He claims that the trial court neither gave him credit for the

household furnishings and appliances retained by Ms. Mathews nor considered the real estate commission received by Ms. Mathews when she acted as realtor for the sale of their marital residence. He further contends that the trial court failed to consider that he was responsible for a student loan for the parties' daughter, or that he paid the mortgage and utility payments on the marital residence during the pendency of the divorce.

**{¶ 18}** In divorce proceedings the trial court must divide the parties' separate and marital properties equitably. R.C. 3105.171(B). Marital property shall be divided equally, unless a different division would be equitable. R.C. 3105.171(C). Marital property includes all real and personal properties or interests therein that were acquired by either or both spouses during the marriage. R.C. 3105.171(A)(3)(a)(i).

**{¶ 19}** In determining what constitutes an equitable division of marital property, the trial court must consider all relevant factors, including those set forth in R.C. 3105.171(F). *Kestner v. Kestner,* 173 Ohio App.3d 632, 637, 2007-Ohio-6222, 879 N.E.2d 849, ¶ 10 (7th Dist.). Appellate courts review divisions of property under an abuse of discretion standard. *McKenzie v. McKenzie,* 2d Dist. Greene No. 2006-CA-34, 2006-Ohio-6841, ¶ 24.

**{¶ 20}** The record shows that Mr. Mathews was awarded approximately $117,387 in marital assets while Ms. Mathews received approximately $39,272. The trial court ordered Mr. Mathews to pay Ms. Mathews $29,064 as a distributive award in order to equalize the property distribution.

**{¶ 21}** We begin by noting that the trial court did take the student loan into account when it gave Mr. Mathews a credit for the payments made on that loan as well as the amount remaining on the loan. The amount due to Ms. Mathews for one-half of the difference in the property disbursements was $39,057. The trial court reduced this amount to $29,034, expressly based upon

the amount of the student loan Mr. Mathews cites. Thus, this claim is without merit.

{¶ 22} With regard to the payment of the mortgage and utility payments, we find no abuse of discretion. Ms. Mathews contends, and Mr. Mathews does not dispute, that by reason of an order in a prior divorce proceeding, Mr. Mathews was afforded the right to the exclusive use and possession of the marital residence for about 18 months before the home was listed for sale, Ms. Mathews having already moved into separate housing. The trial court could reasonably find that Mr. Mathews was required to pay the mortgage payments and utility bills, since he was the person who had received sole access to the home. While Mr. Mathews argues that he had to move for employment purposes, and was not living in the home during that time, we note that he did not take steps to list the home for sale for 18 months.

{¶ 23} Mr. Mathews next claims that Ms. Mathews received approximately $36,000 in household goods and appliances for which he should have received an offset when the trial court divided the marital property. In its decree, the trial court found that the parties had divided the household goods and items between them during the years that they had been separated. The trial court further found that neither party had presented "sufficient evidence establishing the value of the items of personal property which they divided up between themselves."

{¶ 24} Our review of the record does not support Mr. Mathews's claim that Ms. Mathews received approximately $36,000 in household furnishings and appliances. Again, the record shows that Mr. Mathews had sole use, possession and access to the home for a long period of time, during which he left it vacant. There is nothing in the record, other than his testimony, to support his contention that he left the subject items in the home and that the items were still there when he gave Ms. Mathews access to the home for purposes of the real estate sale. We conclude that the trial

court did not abuse its discretion in this regard.

**{¶ 25}** Finally, we turn to the issue of the real estate commission. The evidence demonstrates that a commission fee of $8,750 was charged with regard to the sale of the marital residence. The evidence also demonstrates that one-half of that amount was paid to a brokerage firm in Cincinnati. Ms. Mathews testified that the majority of the remaining $4,375 was used to pay the expenses of marketing the home for sale. The trial court did not offset this amount against the distributive award. Given the income disparity between Mr. and Ms. Mathews, we do not find that the trial court abused its discretion by failing to offset this commission against the distributive award to Ms. Mathews.

**{¶ 26}** We conclude that the trial court did not abuse its discretion with regard to the distribution of the property and that the distribution is not against the manifest weight of the evidence. Accordingly, Mr. Mathews's Third and Fourth Assignments of Error are overruled.

## IV. The Trial Court Did Not Err in Failing to Order that Mr. Matthews Secure the Payment of Pension Benefits Payable During his Lifetime with Life Insurance

**{¶ 27}** Ms. Mathews asserts the following as her assignment of error on cross-appeal:

THE COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO PROVIDE SURVIVOR PROTECTION TO WIFE FOR THE OHIO POLICE AND FIRE RETIREMENT BENEFIT.

**{¶ 28}** Ms. Mathews contends that the trial court should have required Mr. Mathews to obtain a life insurance policy on his life in order to guarantee that, in the event he predeceased her, her rights in his Police and Fire Pension Fund benefits would be protected.

{¶ 29} The evidence in this case shows that prior to the election of disability retirement benefits, Ms. Mathews voluntarily waived her right to survivorship benefits under the retirement plan. This was done so that Mr. Mathews would receive the maximum disability retirement benefits available.

{¶ 30} During trial, Ms. Mathews's pension expert testified that because Mr. Mathews elected a single life annuity when he sought disability retirement benefits, Ms. Mathews would not receive any survivor benefits after Mr. Mathews's death. The expert noted that the trial court could secure survivorship benefits to Ms. Mathews by requiring one of the parties to obtain life insurance on Mr. Mathews in an amount equal to Ms. Mathews's share of the disability retirement benefits. In her post-trial brief, Ms. Mathews stated:

> * * * [Ms. Mathews] is entitled to one-half of the full benefit of [Mr. Mathews'] Police & Fire monthly pension payment as a division of marital assets effective March 1, 2013. The benefit was elected as a single life annuity. The present value of the marital portion of that benefit is $724,690.50. Accordingly, [Mr. Mathews] shall be required to cooperate with [Ms. Mathews] in securing a life insurance policy in the minimum amount of $350,000.00. The premium costs therefore should be shared equally by the parties. Dkt. 21, p. 1-2.

{¶ 31} The trial court found that once the disability retirement benefits "transmute" into retirement benefits, Mr. Mathews would be able to designate Ms. Mathews as his "alternate payee." Thus, the trial court determined that it was unnecessary to order either party to obtain life insurance to protect Ms. Mathews's survivorship interest in the retirement benefits.

{¶ 32} From our review of the record, we find no support for the trial court's finding that

Ms. Mathews will be entitled to survivorship benefits under the pension plan. Indeed, as noted above, the record demonstrates that she specifically waived any survivorship interest. Thus, the trial court erred in finding that Ms. Mathews was entitled to a survivorship interest.

{¶ 33}  Because Ms. Mathews waived survivorship benefits in order that the parties would receive the maximum amount of benefits possible during Mr. Mathews's lifetime, we conclude that equity does not require Mr. Mathews to secure a benefit – survivorship benefits – that Ms. Mathews knowingly waived in order to maximize Mr. Mathews's lifetime benefit – a benefit in which she now shares by virtue of the divorce decree.

{¶ 34}  Ms. Mathews's sole assignment of error is overruled.


## V.  Conclusion

{¶ 35}  All of the assignments of error of both parties having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

Valerie Juergens Wilt
Joseph M. Juergens
Hon. Thomas J. Capper