[Cite as *Saunders v. Williams*, 2014-Ohio-629.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

WILLIAM SAUNDERS, SR　　　　　　:
　　　　　　　　　　　　　　　　　　:　　Appellate Case No. 2013-CA-44
　　　Plaintiff-Appellant　　　　　　:
　　　　　　　　　　　　　　　　　　:　　Trial Court Case No. 12-CVF-1731
v.　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
CORBIN WILLIAMS　　　　　　　　:　　(Civil Appeal from Clark County
dba CORBIN'S CONSTRUCTION　　　:　　　Municipal Court)
　　　　　　　　　　　　　　　　　　:
　　　Defendant-Appellee　　　　　　:
　　　　　　　　　　　　　　　　　　:

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of February, 2014.

. . . . . . . . . . .

ANTHONY E. KOHLER, Atty. Reg. #0032826, Kohler Legal Services, LLC, 1130 Vester Avenue, Suite A, Springfield, Ohio 45503
　　　Attorney for Plaintiff-Appellant

WILLIAM D. WEST, Atty. Reg. #0018465, 20 South Limestone Street, Suite 120, Springfield, Ohio 45502
　　　Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1}　　Plaintiff-appellant William Saunders, Sr., appeals from a judgment rendered

against him on his claim for breach of contract against defendant-appellee Corbin Williams (doing business as Corbin's Construction). Saunders contends that the judgment is against the manifest weight of the evidence.

{¶ 2}   Our review of the evidence leads us to conclude that the judgment is not against the manifest weight of the evidence.   Accordingly, the judgment of the trial court is Affirmed.

## I.  Saunders Contracts with Williams to Install a Metal Roof on an Exterior Garage

{¶ 3}   Saunders entered into a written contract with Williams to install a metal roof on his exterior garage, for the contract price of $4,800, $2,400 of which was to be a downpayment, with the balance to be paid upon completion.   The contract stated that the work was to be "completed in a substantial workmanlike manner."   After the work was completed, Saunders completed the payment of the contract price, but he thereafter became dissatisfied with the work.

## II.   The Course of Proceedings

{¶ 4}   Saunders brought this action for breach of contract against Williams in the Municipal Court of Clark County.   The action was tried to the bench.   After taking the case under advisement, the trial court rendered judgment for Wiliams.   Saunders appeals.

## III.   The Judgment Is Not Against the Manifest Weight of the Evidence

{¶ 5}   Saunders sets forth three assignments of error:

APPELLEE BREACHED THE WRITTEN CONTRACT HE HAD WITH APPELLANT.

THE TRIAL COURT'S RULING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

APPELLANT IS ENTITLED TO MONETARY DAMAGES FROM APPELLEE.

{¶ 6} All of Sanders's assignments of error are based upon his argument that the judgment is against the manifest weight of the evidence. "The manifest-weight-of-the- evidence standard of appellate review set forth in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), applies in civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 17–23." *Mathews v. Mathews*, 2d Dist. Clark No. 2012-CA-79, 2013-Ohio-2471, ¶ 9. Under *Thompkins*, at 387:

Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's [Law Dictionary (6 Ed.1990) ], *supra*, at 1594.

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs* [*v. Florida*], 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. *See, also, State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215,

219, 485 N.E.2d 717, 720–721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

{¶ 7}　In attempting to prove that Williams did not install the metal roof in a workmanlike manner, Saunders presented himself and an expert – Terry Shaffer, a Clark County Building Inspector – as witnesses.　He also called Williams, as upon cross-examination.　None of the witnesses, however, testified that Williams did not install the roof in a workmanlike manner.

{¶ 8}　When Shaffer was asked whether the job was done in a workmanlike manner, his answer was significant:

> Q. * * * .　Um do you believe the job was done in a uh workmanlike appropriate manner based upon your experience as a building inspector?
>
> A.　It just wasn't done to the manufacturer's specifications.

{¶ 9}　Shaffer then testified in detail concerning the ways in which the installation of the roof was performed contrary to the manufacturer's specifications.　Saunders had purchased the manufacturer's handbook.　Shaffer and Williams had seen the book before trial, and the book was admitted in evidence.　Shaffer went through the ways in which the roof was installed contrary to the procedures set forth in the book.　Shaffer also testified that he would not have

been satisfied with the roof as installed, if he had been the homeowner contracting with Williams.

{¶ 10}   Saunders testified concerning his dissatisfaction with the work, and the fact that it was not done in the manner indicated in the manufacturer's handbook.   He also testified concerning two estimates he had received to re-do the installation of the metal roof.

{¶ 11}   Williams was called by Saunders as upon cross-examination.   He testified that he installed the metal roof in the manner he had been taught when he had previously worked for a contractor.   He also testified that he had since "drove over half of Clark County lookin' at barns that's been put up recently," and that "ninety percent of 'em I looked at the screws are in the ribs."   The placement of the screws was one of several ways in which the roof was installed contrary to the handbook, according to the testimony of Shaffer and Saunders.   Williams did not present any evidence.

{¶ 12}   Saunders had the burden of proving that the roof was not installed in a workmanlike manner.   His evidence did not establish that fact directly.   Both Saunders and Shaffer were clearly dissatisfied with the work, and their testimony did establish that it was not performed in accordance with the manufacturer's handbook.   But that handbook, which was admitted in evidence, included the following disclaimer on its inside cover:

> **Disclaimer**
>
> The details and written instructions described in this manual are suggested installation methods to ensure a quality application of our products, and should be considered as a guideline only.   FABRAL recognizes that installation techniques can vary based upon builder and geographical preferences, *and that there are other acceptable ways to install our products*.   (Bolding in original, italics

added.)

**{¶ 13}** Saunders testified that the roof leaked after Williams installed it, attributing the leaks to Williams's poor workmanship.   But in his testimony, Williams disputed that any leaks were the result of his poor workmanship:

Q.   Now let me ask you this you are not disputing that there are problems and have been leak problems because you've had some of your own people out there is that correct?

A. * * *

Q.   Well let me clarify the question.   Not not [sic] you but you had people in terms of like representatives or insurance people that went out and took pictures in your behalf you'll remember that independent of this lawsuit.

A.   My insurance company went out there yeah.

Q.   Right.   And let me ask you about that um well as well from your recollection um do these exhibits Ten through Thirteen if you could look at those for just a minute, do they represent uh pictures of the property that to the best of recollection . . .

A.   Yeah the boot that I put on there is missin'.

Q.   Okay.   Alright.   And what exhibit is that?

A.   Thirteen.

Q.   Exhibit Thirteen.   So there's an arrow and there's a boot that's missing?

A.   Yeah the boot rubber boot rubber boot [sic] put on here that I had to

make. Had to take a roof pipe jack like you use for puttin' around pipes and stuff okay Mr. Saunders didn't want to pay to get the cat head cut off for the electric so we could slide somethin' down over it. So I drilled a hole when we did the metal I had to that's for I had to splice a piece of metal in there. And then I drilled a hole with a pole saw to make it perfect. I cut the pipe jack collar and I split that boot and I put that boot around there real nice and neat and glued it with uh rubber cement. It shouldn't have never, it shouldn't have come off, it shouldn't have leaked. But you know what we had some headgacious [sic] winds and some headgacious storms down there.

Q. So if you installed the boot that's no longer on there according to Plaintiff's Exhibit Thirteen is no longer on there than [sic] either it came off due to weather or somebody took it off? You just you don't you don't know?

A. No I didn't . . .

{¶ 14} Looking at the entirety of the evidence in the record, we conclude that a reasonable finder of fact *might* have inferred that Williams's installation of the metal roof was not performed in a workmanlike manner, but was not *required* to draw that inference.

{¶ 15} There is no evidence in this record that the parties entered into the contract with reference to the manufacturer's handbook; therefore, the procedures set forth in the handbook did not serve as specifications under the contract. The contract did set out some specifications for the work, but Saunders has not complained that these specifications were not complied with.

{¶ 16} Saunders's theory of recovery against Williams required a finding that Williams failed to install the metal roof in a workmanlike manner. The trial court did not so find. From

our review of the evidence in the record, we conclude that the trial court's failure to make this finding is not against the manifest weight of the evidence. Accordingly, all of Saunders's assignments of error are overruled.

## IV.  Conclusion

{¶ 17}  All of Saunders's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.


Copies mailed to:

Anthony E. Kohler
William D. West
Hon. Thomas E. Trempe