[Cite as *Cockerham v. Cockerham*, 2017-Ohio-5563.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| TARA ALLISON COCKERHAM | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 16-CA-88 |
| | : | |
| STEVEN TROY COCKERHAM | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Licking County Court of
                                Common Pleas, Domestic Relations
                                Division, Case No. 2011 DR 00766
                                RPW



JUDGMENT:                       REVERSED AND REMANDED




DATE OF JUDGMENT ENTRY:         June 26, 2017




APPEARANCES:

For Plaintiff-Appellee:                  For Defendant-Appellant:

STEPHEN B. WILSON                        DEBRA J. DESANTO
35 South Park Place, Suite 150           887 South High Street
Newark, Ohio 43055                       Columbus, OH 43206

*Delaney, P.J.*

{¶1}   Defendant-Appellant Steven Troy Cockerham appeals the October 12, 2016 judgment entry of the Licking County Court of Common Pleas, Domestic Relations Division.

## FACTS AND PROCEDURAL HISTORY

{¶2}   Plaintiff-Appellee Tara Allison Cockerham and Defendant-Appellant Steven Troy Cockerham were married on November 13, 2004. Wife filed a complaint for divorce on June 7, 2011.

{¶3}   The final hearing before the trial court was held on August 29, 2012. On February 1, 2013, the trial court issued the Judgment Entry Decree of Divorce. The trial court found the duration of the marriage was from November 13, 2004 to August 29, 2012. The trial court addressed the parties' retirement benefits. The judgment entry states in pertinent part:

> **VII. RETIREMENT BENEFITS**: The Plaintiff has an interest in the Ohio
> Public Employees Retirement System and the Defendant has an interest in
> the Ohio Police and Fire Pension Fund. The marital portions of the parties'
> retirements shall be equalized. In order for this to be accomplished, Plaintiff
> shall be awarded the entirety of her OPERS retirement, and a sufficient
> portion of the Defendant's OP&F Pension to equalize the marital portion of
> their retirements. Any deferred compensation accounts of the parties shall
> be equalized in the same manner. These divisions shall be subject to a
> Division of Property Order (DOPO) to be prepared by Defendant within 90

days of the filing of this Judgment Entry – Decree of Divorce. Both parties shall fully cooperate with the valuation and preparation of the DOPO.

{¶4} On February 28, 2013, Husband filed a pro se appeal of the Divorce Decree. This court stayed the appeal on March 20, 2013 because Husband filed a bankruptcy action.

{¶5} Husband's bankruptcy action was discharged on July 23, 2013.

{¶6} Wife filed a motion for contempt on March 11, 2014. In her motion, Wife contended Husband was in contempt of the Divorce Decree because he failed to prepare the DOPO. On June 2, 2014, Wife filed a motion to join third party and restraining order and requested the trial court add the Ohio Police and Fire Pension Fund ("OPFPF") as a third-party defendant and to restrain the OPFPF from making distributions to Husband.

{¶7} On November 20, 2014, this court dismissed Husband's appeal for want of prosecution.

{¶8} Based on Wife's pending motions to join OPFPF as a third-party defendant and for a restraining order, Husband and Wife came to an agreement on March 31, 2015 to resolve the issues. The parties' agreement was memorialized in a judgment entry, which states in pertinent part:

1. The Order Restraining the Ohio Police and Fire Pension Fund shall be released to allow for the distribution of the payment of back wages and Defendant's monthly retirement payment to [Husband].

2. Said Back Wage Distribution shall be made payable to [Husband] and directed to [Husband's Attorney]. Monthly payments shall be made directly to [Husband].

3. Said funds shall be held in trust except for the following immediate disbursements:

***

[Husband] shall receive an amount of funds necessary to satisfy the payment to QDRO Consultants, LLC to complete the present value offset and DPO.

No further distribution of funds shall be addressed until such time as QDRO Consultants, LLC has issued their report. At that time, [Wife] shall receive her share of the [Husband's] retirement benefits which have been paid to [Husband].

{¶9} The trial court held a hearing on February 22, 2016, where the parties came to an agreement as to how to proceed on the issue of the division of Husband's retirement funds. The parties agreed to submit the matter to the trial court via affidavits to be heard at a non-oral hearing.

{¶10} Husband submitted his affidavit on April 4, 2016. He averred that on August 6, 2015, Husband was awarded a partial disability from the OPFPF pursuant to R.C. 742.38(D)(2). The partial disability was effective August 6, 2011. Husband's benefit was equal to 52% of his three highest years of earnings and the award is made to only those who are disabled as a result of the performance of official duties. Husband was eligible for retirement at age 51. Husband's gross monthly pension benefit amount was $2,939.73. Husband received a catch-up payment on May 11, 2015 in the amount of $131,796.92. Pursuant to the March 31, 2015 agreed judgment entry, Husband's catch-

up payment was placed in trust to be maintained by Husband's attorney (hereinafter "escrowed funds").

{¶11} Husband argued in his affidavit that his partial disability award was separate property, not marital property. Accordingly, Wife was not entitled to the partial disability award.

{¶12} Wife also filed her affidavit April 4, 2016. Wife countered Husband's disability award was a marital asset because the funds were derived from Husband's retirement account. Wife did not state in her affidavit that Husband was receiving disability benefits in lieu of age and service retirement benefits.

{¶13} A magistrate's decision based on the parties' affidavits was filed on June 27, 2016. The magistrate addressed the escrowed funds. He recommended that an order be entered providing for each of the parties to be awarded fifty-percent of the marital property portion of the escrowed funds. The magistrate made no factual finding that Husband received the disability benefits or catch-up payment in lieu of retirement benefits.

{¶14} Husband filed an objection to the magistrate's decision. Husband's sole objection pertained to the expenditure of the escrowed funds. Husband argued the magistrate should have awarded one-hundred-percent of the escrowed funds to Husband because the escrowed funds represented Husband's back due wages and earnings. The magistrate's decision finding a portion of the escrowed funds was marital property, Husband contended, was equivalent to ordering Husband pay Wife spousal support, which the trial court did not order in the Divorce Decree.

{¶15} Wife responded to Husband's objection. She stated the magistrate's decision as to division of the escrowed funds was correct. Husband was awarded partial disability on August 6, 2015, but the award was effective on August 6, 2011. Wife argued the portion of the escrowed funds from August 6, 2011 to August 29, 2012 (termination date of the marriage) was marital property, but did not claim Husband was receiving the benefit in lieu of retirement benefits. Wife calculated as follows: Husband was entitled to monthly payments of $2,939.73 pursuant to the partial disability award. August 6, 2011 to August 29, 2012 was approximately 13 months. $2,939.73 multiplied by 13 months equaled the marital portion of the escrowed funds or $38,216.49. Fifty percent of $38,216.49 equaled $19,108.24. Wife's portion of the escrowed funds was $19,108.24.

{¶16} On September 30, 2016, the trial court overruled Husband's objection to the magistrate's decision. The trial court agreed with Husband that the entirety of the escrowed funds did not represent marital property. The trial court stated the partial disability award was paid from OPFPF and was paid in lieu of retirement. The Divorce Decree stated the retirement pensions of Husband and Wife should be equalized as of August 29, 2012. The trial court therefore determined that a portion of the escrowed funds was marital property. Wife was entitled to one-half of the marital portion of the escrowed funds, which equaled $19,108.24. The remaining balance of the escrowed funds was awarded to Husband.

{¶17} The trial court memorialized its decision via judgment entry filed October 12, 2016. It is from this judgment entry Husband now appeals.

**ASSIGNMENT OF ERROR**

{¶18} Husband raises one Assignment of Error:

{¶19} "WHETHER THE COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE RESPONDENT-APPELLANT, STEVEN TROY COCKERHAM IN GRANTING PETITIONER-APPELLEE, A PORTION OF APPELLANT'S BACK PAY AND EARNINGS WHICH ARE ONLY ATTRIBUTABLE TO APPELLANT."

**ANALYSIS**

{¶20} Husband argues in his sole Assignment of Error that the trial court erred and/or abused its discretion in finding a portion of the escrowed funds were marital property and awarding the same to Wife. Within his argument on appeal, Husband also raises the issue that the trial court erred when it valued Husband's pension based on Husband's official retirement age, rather than using a frozen valuation method. In the magistrate's decision of June 27, 2016, the magistrate valued Husband's pension based on Husband's official retirement age. Husband's objected to the magistrate's decision but raised only the issue of the division of the escrowed funds. Husband did not object to the magistrate's valuation method for Husband's pension. Pursuant to Civ.R. 53(D)(3)(b)(iv), a party is not permitted to assign as error the trial court's adoption of any factual or legal conclusion unless the party has objected to that finding or conclusion. Husband did not raise the issue of Husband's pension valuation in his objection to the June 27, 2016 magistrate's decision. Accordingly, that issue is waived on appeal.

**Standard of Review**

{¶21} An appellate court generally reviews the overall appropriateness of the trial court's property division in divorce proceedings under an abuse-of-discretion standard.

*Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). In order to make an equitable division of property, the trial court should first determine the value of the marital assets. *See Eisler v. Eisler*, 24 Ohio App.3d 151, 152, 493 N.E.2d 975 (1985). In performing this function, the trial court has broad discretion to develop some measure of value. *See Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (1982). Thus, "[t]he valuation of marital assets is typically a factual issue that is left to the discretion of the trial court." *Roberts v. Roberts,* 10th Dist. Franklin No. 08AP–27, 2008–Ohio–6121, ¶ 18 citing *Berish, supra.* Generally, as an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 2010–Ohio–3489, 936 N.E.2d 1013 (5th Dist.), ¶ 16, citing *Cross Truck Equipment Co. v. Joseph A. Jeffries Co.*, 5th Dist. Stark No. CA–5758, 1982 WL 2911 (Feb. 10, 1982).

{¶22} "Trial court decisions on what is presently separate and marital property are not reversed unless there is a showing of an abuse of discretion." *Valentine v. Valentine*, 5th Dist. Ashland No. 95COA01120, 1996 WL 72608 (Jan. 10, 1996), citing *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994). Specifically, "[w]hen considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan,

and the reasonableness of the result." *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 559 N.E.2d 1292 (1990), paragraph one of syllabus.

{¶23} Pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. * * * "

{¶24} R.C. 3105.171(C)(1) further states: "Except as provided in this division or division (E)(1) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section."

{¶25} The fair and equitable division of pension or retirement benefits in a divorce matter in Ohio is left to the trial court's discretion. *Hoyt, supra,* at paragraph one of the syllabus. Pension or retirement benefits earned during the marriage are marital assets and a factor to be considered in the just division of property. *Id.* at 178.

**Escrowed Funds: Marital or Separate Property?**

{¶26} It is within the trial court's discretion to determine whether property is marital or separate, the value of the property, and the equitable division of the property. In the present case, the property at issue is the escrowed funds. Husband contends the escrowed funds are disability benefits and therefore separate property, which cannot be divided. Wife contends the escrowed funds are retirement benefits, of which a portion is marital property and should be divided.

{¶27} "The general rule is that pension or retirement benefits earned during the course of a marriage are marital assets and a factor to be considered not only in the division of property, but also in relationship to an award of alimony." *Hoyt, supra* at 178-179; R.C. 3105.171(A)(3)(a)(i). Husband does not dispute the general rule. He contends in this case that the escrowed funds are separate property.

{¶28} The Ohio Revised Code defines separate property, in pertinent part, as "all real and personal property and any interest in real or personal property that is found by the court to be any of the following: * * * (vi) [c]ompensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets." R.C. 3105.171(A)(6)(a). Disability benefits are a form of compensation for a spouse's personal injury and, generally, are not considered marital property. *Bakle v. Bakle*, 2nd Dist. Greene No. 2009 CA 9, 2009-Ohio-6003, ¶ 12 citing *Ockunzzi v. Ockunzzi,* 8th Dist. Cuyahoga No. 86785, 2006-Ohio-5741, at ¶ 64, citing *Arkley v. Arkley,* 7th Dist. Jefferson No. 03 JE 10, 2003-Ohio-7021. "Disability benefits are not marital property unless they are accepted by the retiree in lieu of retirement pay, in which case they are marital property to the extent that retirement pay value is included in the disability pension benefit." *Bevan v. Bevan*, 9th Dist. Lorain No. 06CA008969, 2008-Ohio-724, ¶ 7 citing *Hyder v. Hyder,* 9th Dist. Wayne No. 06CA0014, 2006-Ohio-5285, at ¶ 37 (quoting *Elsass v. Elsass,* 2nd Dist. Greene Nos. 93-CA-0005, 93-CA-0016, 1993 WL 541610 at 5 [Dec. 29, 1993]); see also *Arkley, supra*; *Bauser v. Bauser*, 118 Ohio App.3d 831, 835, 694 N.E.2d 136 (2nd Dist.1997). "On the date a spouse becomes eligible for retirement, the disability benefits being received, though not marital property per se, begin to represent retirement benefits to the extent that they equal the retirement

benefits the spouse would receive but for his disability." *Mathews v. Mathews*, 2nd Dist. Clark No. 2012-CA-79, 2013-Ohio-2471, ¶ 11 quoting *Young v. Young*, 2nd Dist. Clark Nos. 08-CA-59, 08-CA-61, 2009-Ohio-3504, ¶ 31. "* * * [T]o be entitled to the marital portion of retirement benefits in this situation, the non-participant spouse has the burden to prove that the disability benefits are being received in lieu of retirement benefits or that the retirement benefits the participant spouse would otherwise be entitled to receive are being reduced by the receipt of disability benefits." *Young v. Young*, 2009-Ohio-3504, ¶ 29.

{¶29} In *Young v. Young*, the Second District Court of Appeals addressed a similar factual scenario regarding an OPFPF participant, disability benefits, and divorce:

The trial court awarded Sandra one-half of the retirement benefits Randy receives from the Ohio Police & Fire Pension Fund (OPFPF). Randy, however, is currently eligible to receive disability benefits from the OPFPF, having suffered an on-the-job injury in April 2007 that forced him to resign the same month from the Springfield Fire Department. Randy testified that the OPFPF had approved maximum partial disability benefits of $2,674 per month, which he was to begin receiving soon. It is not clear from the evidence in the record whether, provided Randy remains "disabled," the disability benefits will end this side of his grave. Sandra says that if she must wait until Randy actually receives retirement benefits, she may never get her marital share. As Randy's disability benefits are roughly $1,000 per month more than his retirement benefits will be, he has every incentive to continue receiving these benefits for as long as he can. Sandra contends

that the trial court instead should have determined the date on which Randy became entitled to receive OPFPF retirement benefits and ordered payments of her marital share be made then, regardless of whether Randy has actually received them.

*Young v. Young,* 2009-Ohio-3504, ¶ 28.

{¶30} The Second District Court of Appeals acknowledged that disability benefits are not marital property unless they are accepted by the retiree in lieu of retirement pay. *Id.* at ¶ 31. The court reviewed the record to determine if Sandra met her burden to show Randy was entitled to receive retirement benefits from his pension:

Having accumulated 24 years 11 months and 2 days of service, Randy is entitled to receive an OPFPF service-commuted retirement pension. The marital portion of his pension has a stipulated present-value of $387,744.72, or $1,636.48 per month. According to the OPFPF documents in the record, it appears that a member can begin receiving retirement benefits from a service-commuted pension at 48 years of age or when 25 years have elapsed from the day the member was initially hired, whichever comes last. When he resigned in April 2007, Randy (born in 1953) was over 50 years of age, and it was less than one month shy of 25 years since he began his service. Hence, it appears that Randy was eligible to begin receiving retirement benefits already in May 2007.

*Id.* at ¶ 32.

{¶31} The Second District compared the *Young* case to its decision in *Mueller v. Mueller,* 2nd Dist. Montgomery No. 20847, 2005-Ohio-5915:

There, the final divorce decree stated that a former wife was entitled to receive her marital share of her former husband's Public Employee Retirement System (PERS) retirement benefits when the latter received them. Sometime after the divorce, the former wife argued to a magistrate that her former husband had retired but refused to provide her with her share of the retirement benefits. The magistrate disagreed, finding that he had not yet retired and was receiving disability payments, and held that she was not yet entitled to her share of the retirement benefits. The former wife appealed to the trial court, and the trial court agreed with the magistrate, saying that the disability benefits were still in the nature of wage replacement. The court, though, remanded back to the magistrate with instructions to determine the date on which the former husband would become eligible for retirement benefits. He then appealed to this court. Affirming, we held that the trial court "correctly remanded the matter back to the Magistrate for a determination of the time at which Appellee will fulfill the age requirements for PERS pension benefits and accordingly subject his benefits to division and payment to Appellant." *Id.* at ¶ 15.

*Id.* at ¶ 33.

{¶32} The Second District remanded the matter to the trial court to determine the date on which Randy was eligible for retirement benefits and then fashion an appropriate order directing him to begin making payments to Sandy of her marital share. *Id.* at ¶ 34.

{¶33} The Second District relied on *Young* in *Mathews v. Mathews*, 2nd Dist. Clark No. 2012-CA-79, 2013-Ohio-2471. In that case, the parties were divorced in 2012. The

husband was a participant in the OPFPF and he retired on a disability retirement pursuant to R.C. 742.38(D)(2) on April 28, 2005. The husband was not eligible to retire until age 48 or March 1, 2013. *Id.* at ¶ 14. The court found his disability retirement benefits became the functional equivalent of retirement pension benefits on March 1, 2013. *Id.* On that date, the wife was entitled to share in those benefits because the husband was receiving the disability benefits in lieu of his service pension entitlements. *Id.* at ¶ 15.

{¶34} Other courts have similarly analyzed the question of whether the participant spouse is receiving public pension disability benefits in lieu of retirement benefits. In *Bevan v. Bevan*, 9th Dist. Lorain No. 06CA008969, 2008-Ohio-724, the husband and wife were divorced in 1995 and the husband retired in 2001. After the OPFPF determined the husband was entitled to disability benefits, he elected to accept a disability retirement grant instead of an age and service pension. *Id.* at ¶ 4. The divorce decree granted the wife an interest in the husband's retirement benefits. *Id.* at ¶ 8. The husband contended that because was receiving disability benefits, not retirement benefits, the wife had no interest in those benefits. The Ninth District disagreed and found the facts showed the husband was receiving a disability pension in lieu of an age and service pension. It held the wife was entitled to the husband's disability benefits because they were a "retirement allowance" pursuant to R.C. 742.01(I) and the language of the divorce decree granted the wife an interest in the payments. *Id.* at ¶ 9.

{¶35} In *Gallito v. Levinsky*, 7th Dist. Mahoning No. 13 MA 143, 2016-Ohio-889, the husband and wife were divorced in 2007. The husband began receiving disability benefits from OPERS at age 51 in 2007. The husband was eligible for an age and service pension at age 52 in March 2008. The trial court awarded the wife only an interest in the

husband's OPERS retirement. *Id.* at ¶ 15. The wife appealed, arguing the trial court did not consider the husband's disability benefits. *Id.* at ¶ 17. The Seventh District agreed the trial court failed to determine when the husband began receiving a disability pension in lieu of an age and service pension. *Id.* at ¶ 23.

{¶36} In *Burkhart v. Burkhart*, 12th Dist. Clermont No. CA2008-04-042, the Twelfth District reversed a trial court's decision to award the non-participant spouse her husband's disability benefits. The court found the wife failed to meet her evidentiary burden to show the husband's disability benefits were received in lieu of an age and service retirement. *Id.* at ¶ 20. The evidence showed the disability benefits came from the same fund but were paid for the purpose of income replacement, not retirement. *Id.* at ¶ 24.

**Was Husband Receiving Disability in Lieu of Age and Service Pension?**

{¶37} Wife claimed, and the trial court agreed, a portion of the escrowed funds consisting of Husband's disability benefits were marital property. Based on the holdings of the Second, Seventh, Ninth, and Twelfth Districts on this issue, we find the trial court's conclusion is an abuse of its discretion. Disability benefits are generally considered separate property. In order to characterize disability benefits as marital property, Wife as the non-participant spouse was required to establish Husband received disability benefits in lieu of an age and service pension for the disability benefits. The only evidence in this case are the parties' affidavits. A review of the Wife's affidavit shows that Wife did not present any evidence to demonstrate Husband received disability benefits in lieu of receiving an age and service pension. Further, Husband had not reached retirement age during the trial court proceedings. At the time of the trial court's decisions in 2016,

Husband was approximately 46 years old. The evidence in the record showed Husband is eligible for retirement at age 51. We find the evidence in the record is insufficient for the trial court to conclude Husband's disability benefits were received in lieu of an age and service pension in order to characterize the catch-up payment in the escrowed funds was marital not separate property.

{¶38} We reverse the October 12, 2016 judgment of the trial court as to the escrowed funds and remand the matter to the trial court to determine, based on the evidence presented by non-participant Wife, whether Husband received disability retirement in lieu of an age and service retirement before it can award a portion of the escrowed funds to Wife per the terms of the Divorce Decree.

{¶39} Husband's sole Assignment of Error is sustained.

## CONCLUSION

{¶40} The judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is reversed and the matter remanded for further proceedings consistent with this opinion and law.

By: Delaney, P.J.,

Wise, Earle, J. concur.

Hoffman, J., dissents.